## Case No. 3,928.

### DIXON v. BARNUM.

[3 Hughes. 207;[1] 2 Va. Law J. 312.]

District Court, E. D. Virginia. April 30, 1878.

BANKRUPTCY—EFFECT OF DISCHARGE—ENCUMBERED PROPERTY.

A discharge in bankruptcy is only a personal release of the bankrupt from a debt, and does not release any lien of the debt upon the property; and such property may be subjected by a state court to the lien when the property does not form part of the assets in bankruptcy, or by the bankruptcy court when it does, if it comes, after the discharge, again into the possession of the bankrupt.

This was a bill of injunction filed in the United States district court, on its equity side, to enjoin the defendant from interfering with certain real estate of the complainant which he had sold before his bankruptcy while it was subject to a debt of the complainant, and had repurchased some years after the discharge in bankruptcy; the lien of the debt to which it had been subject not yet having been satisfied.

The facts of the case are fully set out by the bill as follows: "Some time in the year

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

1869, John B. Donovan, administrator of E. Barnum, deceased, along with other persons, filed a bill in the circuit court of Matthews county to subject the real estate of your orator to the payment of certain judgments which had been obtained against your orator. The cause proceeded regularly, and at the March term of the circuit court of Matthews county, 1878, a decree was entered against your orator requiring him to pay to John B. Donovan, administrator of E. Barnum's estate, the sum of one hundred and eighty-four 93-100 dollars, with interest on seventy-eight 40-100 dollars part thereof, from the 15th September, 1877, until paid. Your orator prays that your honor will interpose and give him relief for the following reasons, viz.: On the 27th day of December, 1867, your orator sold and conveyed to one Fountaine Green, all the real estate of which your orator was possessed. In March, 1868, your orator filed his petition in the United States district court to be adjudged a bankrupt, and in a few months obtained his discharge in bankruptcy. On the 9th day of December, 1868, your orator purchased the said land from Fountaine Green, and soon thereafter the suit above referred to was instituted in Matthews circuit court. 'Tis true the judgment in favor of Barnum's administrator was obtained in April, 1861, but it was not docketed until September 4th, 1868, eight months after your orator sold the land to Fountaine Green, and four months after your orator had filed his petition in bankruptcy. Certain it was that Fountaine Green was a purchaser for valuable consideration and without notice. In the meantime your orator having obtained his discharge, certainly it was his right to purchase real estate, and the real estate thus acquired after discharge could not possibly be liable for any judgments against your orator, obtained before he filed his petition in bankruptcy. The land now owned by your orator has been decreed to be sold to pay off and discharge this judgment in favor of John B. Donovan, administrator of E. Barnum, deceased, and Sands Smith, of Matthews county, has been directed to execute the decree. Your orator states and so charges the fact to be, that this honorable court should protect him in those legal rights guaranteed to him in pursuance of his discharge, and should protect him in his after-acquired property. In tender consideration whereof," etc.

In the suit in the state court thus alluded to by the bill, the judge of that court had filed the following opinion on the question of law on which the case turned. There were two suits in that court precisely the same, and this opinion was filed in one for both:

Montague, Judge. This is a bill filed by the plaintiffs to enforce judgment liens against the real estate of John W. Dixon. The following facts appear from the record: That John W. Dixon, by deed, duly recorded

in the clerk's office of the county court of Matthews county, did, on the 27th day of December, 1867, convey to one Fountaine Green, in fee, his entire real estate situated in said county. That after this, and very soon after, he applied for the benefit of the United States bankrupt law, and obtained a full discharge. That the consideration, expressed in the said deed, was two thousand dollars. After the said Dixon was discharged in the bankrupt court, the said Fountaine Green, to wit, on the 9th day of December, 1868, reconveyed said real estate to the said Dixon, in fee. That before the conveyance by the said Dixon to the said Green, of the real estate, there were sundry judgments against the said Dixon; some of the judgments were docketed and some not. This bill was filed at March rules, 1869, and Dixon never answered the bill till the September term of Matthews circuit court for 1877. In his answer, he makes no other defence than to set up his discharge in bankruptcy, as a complete and full bar to the plaintiff's demand. Is it a bar? is the only question for this court to decide.

As to the judgments which were docketed before the sale to Green, there is no difficulty. They are liens on Dixon's real estate, and it is liable for their satisfaction. This is conceded by his counsel. But how is it with those not docketed? A judgment is a lien upon all the real estate of the judgment debtor from the time of its rendition. The docketing gives no additional force or validity to the judgment. If not docketed, a bona fide purchaser without notice of the judgment is protected. This, as I understand the rule, is the effect of docketing a judgment and nothing else. When Dixon took a reconveyance of the land from Fountaine Green, did not these liens, though not docketed, still adhere to the land in Dixon's hands? Under all the facts and circumstances in this case, were said liens destroyed, or did they ever cease to exist? Fountaine Green, quoad the undocketed judgments, may be treated as a purchaser without notice, and his title good against said judgments; and had he conveyed to any other person than Dixon, might have passed a good title. This he did not do, but reconveyed to Dixon. In 1 Story, Eq. Jur. § 410, the law is laid down thus: "The bona fide purchaser, for a valuable consideration, purges away the equity from the title, in the hands of all persons who may obtain a derivative title, except it be that of the original party (which in this case is Dixon), whose conscience stands bound by the violation of a trust and a meditated fraud."

In 1 Schoales & L. 379, that great equity judge, Lord Redesdale, said: "So, if Mr. Daly had made a conveyance to another person with notice of the trust, and taken back a reconveyance, this would have operated nothing; it would not have altered the estate; nay, if a trustee conveys to a person who has no notice of the trust, and then takes a reconveyance, he having notice of the trust, it attaches on him, though it would not on a person not having notice; if a third person had become a purchaser he would have held discharged of the trust." In the second volume of the Leading Cases in Equity [page 1], in the case of Basset v. Nosworthy, this whole doctrine of subsequent purchasers without notice is fully examined and discussed; and while it is admitted as settled law, that where one purchases an estate bona fide, and for valuable consideration, without notice of prior liens or incumbrances thereon, his title is good, and if he sells to another, the title will pass free of the incumbrances or liens, that authority says: "But this principle ceases to be applicable when an estate bought without notice, is reconveyed to a prior purchaser, who sold in violation of rights, which he knew at the time of his purchase, and whose conscience is still tainted with the original fraud." This doctrine has been recently approved by our court of appeals. They say: "A bona fide purchaser of an estate for valuable consideration, without notice, purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated fraud." Carter v. Allan, 21 Grat. 248.

Thus stands the law. Now, does it apply to this case? I think it does. Mr. Dixon sold to Mr. Green, went into bankruptcy, got his discharge, and in less than one year Green conveys back to him the land upon which the liens existed at the time of the sale to Green. Dixon knew, when he conveyed to Green, of the existence of these liens; he knew it when Green reconveyed to him; he knew it all the time. In such transactions the law requires good faith and fair dealing. Can it be truthfully said that we have this good faith and fair dealing here? Can just, fair, and bona fide creditors be thus deprived of their rights? Can a court of equity aid in such transactions as this? Dixon relies alone on his bankrupt discharge. Will this avail him? This is the next and last question we shall examine. The bankrupt discharges one personally from all antecedent debts. It is simply a personal discharge. It does not undertake to destroy liens on property; it simply gives a personal discharge and leaves the liens where it found them. If Mr. Dixon had never gone into bankruptcy, his sale to Mr. Green, and Green's sale to him (Dixon) with full knowledge of the liens, the liens would still stand against Dixon's land. We have seen that Dixon's selling to Green,—Dixon having full knowledge of the liens, and Green not,—and then Green's conveying back to Dixon,—Dixon still having knowledge of the liens,—has been declared by our court of

appeal to be a breach of trust and a meditated fraud. The bankrupt discharge does not cure and purify this fraud. See Jones v. Clark, 25 Grat. 667. Dixon was guilty of a constructive or implied fraud by selling to Green, with full knowledge of the judgment liens on his land, going immediately thereafter into bankruptcy; and as soon as he gets a discharge therein, accepts a deed from Green conveying the land back to him, —and all this done in less than a year from the time he conveys the land to Green. With these facts shown in the record, can any one say that Dixon did not meditate a fraud upon his judgment creditors? To put it in the mildest form, it is a constructive or implied fraud, and the court of appeals, in the last case cited, says a constructive or implied fraud "has precisely the same effect with actual fraud, in regard to the measure of liability therefor," and most pertinently and forcibly asks, "Why has it not the same effect in regard to his discharge in bankruptcy? Can this question of discharge be made to depend upon the degree of aggravation of the fraud?"

There is to my mind another fact disclosed by the record, which strongly tends to show that this whole transaction was, on the part of Dixon, a breach of good faith and fair dealing, and therefore a "meditated fraud." The bill was filed at March rules, 1869, and Dixon never answered it till the September term of this court for 1877, a period of over eight years; and when he does answer, gives no explanation of the transaction, but simply attempts to screen himself behind his bankrupt discharge. I do not think this can protect him, and am of opinion, that by the facts in this case, the liens on Dixon's land, existing at the time of the sale to Green, have never been destroyed, but still exist in full force, and there may be a decree accordingly.

September 29th, 1877.

On the facts and law of the case thus stated, the United States district court dismissed the bill on grounds set forth as follows:

HUGHES, District Judge. In the suit of E. Barnum's Administrator et al. v. John W. Dixon, in the circuit court of Matthews county, Dixon's deed to Green, conveying the land which the bill sought to subject to judgment liens, was not attacked as fraudulent, but was treated as valid, and therefore it must be so considered by this court. If it was valid, then Dixon, when he came into bankruptcy, had conveyed away all his title, and the land did not become part of the assets in bankruptcy, and the bankruptcy court could not have had any jurisdiction over the land. Not only, therefore, did the land remain charged with any liens that might have been superior to Dixon's deed of conveyance to Green, but the enforcement of such liens remained within the exclusive jurisdiction of the proper state court. It is very true that

it would have been competent for the assigns in bankruptcy or any alien creditor to come into this court and attack the deed as invalid by reason of fraud; in which event, this court would have had jurisdiction to try such an issue. If such a bill had been filed and this court had pronounced the deed fraudulent and void, then the land it related to would have become part of the assets in bankruptcy, and this court, on its bankruptcy side, would then have had exclusive jurisdiction to administer it as assets, and to ascertain and liquidate the liens resting upon it. But the deed of Dixon to Green has been all along accepted and treated as valid; and it therefore operated to convey away all of Dixon's title, and therefore the land it conveyed formed no part of the assets in bankruptcy, and was not and is not within the jurisdiction of this court. If it was charged with liens when conveyed by Dixon to Green, it is exclusively for the state court so to decree. It is not competent for this court to consider of that matter.

But it is claimed that the discharge of Dixon in bankruptcy operated to extinguish as to him all debts which he owed before the date of his petition in bankruptcy, and that such discharge operated to release the land which he had conveyed away from the lien of the debt to E. Barnum's administrator when the land came back to him by Green's reconveyance. Let us examine this pretension. The bankruptcy proceeding consists of two branches. The bankrupt surrendered his estate to the court, and becomes civiliter mortuus as to it from the filing of his petition. The estate comes to the court charged by the bankruptcy law with all liens which were resting upon it. The bankruptcy proceeding then goes on, in one branch as to the bankrupt, and in the other branch as to his estate and the liens upon it. The law requires the bankruptcy court to respect and discharge the liens resting upon the estate, and contains nothing in the remotest degree implying that the estate which had been held by the bankrupt previously to the filing of his petition shall be exonerated from the liens legally resting upon it. The bankruptcy proceeding, in the branch relating to the bankrupt himself, is purely personal, and the discharge in bankruptcy is simply a personal exoneration of the bankrupt from the debts which he had owed. Even the assets which he brings into bankruptcy are charged with all liens existing against them, and if they are sold after his discharge (a thing not unusual), and he becomes the purchaser of such of them as are incumbered with liens, he takes them subject to the liens of the very debts from which he is personally discharged. If this be so by the express terms of the bankrupt law [of 1867 (14 Stat. 517)], as to property which he brings into the bankruptcy court, how much more certainly is it as to property which, by fraud or contrivance, or even by honest transfer, he has managed not

to surrender in bankruptcy. The discharge in bankruptcy is merely personal as to the bankrupt, and does not affect his estate. If the estate is subject to liens, the personal discharge of the bankrupt does not operate to release it from the liens. The bankrupt cannot, by conveying away any part of his estate before filing his petition, discharge it of liens which would be enforced against it if it came into bankruptcy. That which he thus conveys away may be subjected by state courts to liens incumbering it. That which he brings into bankruptcy will be subjected to liens incumbering it by the bankruptcy court. In either case the lien in rem will stand and be enforced, though the debt in personam be discharged in bankruptcy. The language of the order of discharge is that John W. Dixon, the bankrupt person, "be discharged from all debts which existed at the filing of his petition;" not that his estate be discharged from the liens of those debts. Documents of this sort mean only what they express, and are not construed to operate beyond the strict effect of their terms. When, therefore, a discharge in bankruptcy declares that the said bankrupt, John W. Dixon, is forever discharged from debts and claims due on the day of his petition, it refers to him personally, and cannot be construed to mean that his estate is discharged from the liens which incumber it.

As to the more general aspects of this case, I concur fully in the opinion of Judge Montague rendered in the cause in the state court, and will dissolve the temporary restraining order heretofore entered by me, and dismiss the bill in this court.

The case of G. W. Simmons is similar to this one in its general features, and I will dissolve the injunction and dismiss the bill in that case also.